UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Manuel McNeely Jr.<br><br>        Plaintiff,<br><br>v.<br><br>Frank J. Bisignano, Commissioner of Social Security,[1]<br><br>        Defendant. | Case No.: 24-cv-1435-BEN<br><br>**ORDER VACATING DECISION OF THE COMMISSIONER AND REMANDING FOR RECONSIDERATION** |

    A Social Security disability benefits applicant may seek judicial review of a final agency decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed this action seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits.

---

[1] Frank J. Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted as the defendant in this suit.

Plaintiff applied for disability and supplemental security benefits claiming he was unable to work as of September 2021. Plaintiff alleged disability beginning on September 2, 2021 due to episodes of blindness, degenerative disc disease, PTSD, knee problem, and anxiety disorder. AR 51, 238. His claim was denied initially on March 3, 2022 (AR 150-154), and upon reconsideration on August 12, 2022 (159-163). After a video hearing held on July 6, 2023 (AR 122-144), Administrative Law Judge ("ALJ") Elias Xenos issued an unfavorable decision dated October 19 2023. AR 30-49. The Appeals Council denied review of the ALJ's decision, and the ALJ's decision became final.

Plaintiff suffers from a number of severe orthopedic impairments. Important for this appeal, Plaintiff also suffers from significant vision impairments from glaucoma.[2] The ALJ acknowledged Plaintiff's manifold orthopedic impairments in asking the vocational expert whether he retained the residual functional capacity to work. The vocational expert opined that there were three jobs that Plaintiff can still perform: agricultural nut inspector, wooden dowel inspector, and glasses nosepiece assembler. AR 38. But the ALJ did not include Plaintiff's visual impairments when he posed the question to the vocational expert. This was error.

At the hearing, Plaintiff recounted that he had suffered and continues to suffer from serious glaucoma in both eyes. His intraocular pressures are poorly controlled

---

[2] "Glaucoma develops when the optic nerve is damaged and can cause blind spots. The damage to the optic nerve is usually the result of increased pressure in the eye." *Shanaz K. v. O'Malley,* No. 22-CV-1610-DDL, 2024 WL 913831, at *1 (S.D. Cal. Mar. 4, 2024) (citing Mayo Clinic, "*Glaucoma,*" https://www.mayoclinic.org/diseases-conditions/glaucoma/symptoms-causes/syc-20372839). It is a progressive disease.

despite his prescribed medications. He describes suffering from episodes of sudden blindness lasting up to an hour or more.[3]

In September 2021, Plaintiff's treating physician, Dr. Dominguez, MD, made a referral to an ophthalmologist for glaucoma of both eyes noting that Plaintiff has had this disorder for many years. In December 2022, Dr. Dominguez, MD, noted that Plaintiff has had glaucoma for a long time and "decreasing vision." AR 599. In March 2023, Dr. Dominguez, MD, observed that Plaintiff is 100% disabled, partly because Plaintiff has suffered from periods of blindness throughout his life which dramatically increased in frequency from around July 2021. AR 593-94.

On January 13, 2023, he was seen by an ophthalmologist, Dr. Gitane Patel, MD, and diagnosed with Primary Open-Angle Glaucoma, bilateral, moderate stage. AR 580. On April 5, 2023, he was seen by a second ophthalmologist, Dr. Christopher Hsu, MD, and again diagnosed with Primary Open-Angle Glaucoma, bilateral, moderate stage. AR 586. Dr. Hsu noted that Plaintiff requested a new doctor because his interocular pressures were still uncontrolled "with VF loss OD on 2 meds." He was referred to another specialist at the University of California, San Diego's Shiley Eye Center. Ophthalmologist, Dr. Robert Neal Weinreb, MD,[4] provides the most recent medical record in the administrative record.

Dr. Weinreb examined Plaintiff on May 31, 2023, approximately six weeks before the ALJ hearing, and diagnosed Plaintiff with Primary Open-Angle Glaucoma (POAG) of both eyes, *severe* stage. AR 728. On June 6, 2023, Plaintiff underwent visual testing. Just two weeks before the hearing, on June 20, 2023, Dr. Weinreb noted "Intraocular pressure above goal despite [ ] with significant risk of progressive vision or visual field loss and/or confirmed progression of vision or visual field loss." AR 748. He discussed

---

[3] A report from Plaintiff's aunt dated January 2021 confirms that Plaintiff goes blind and takes medications for it. AR 266.
[4] The ALJ incorrectly names Dr. Weinreb as Robert Neal, MD. AR 136

possible laser surgery to lower intraocular pressure and that Plaintiff elected to proceed with selective laser trabeculoplasty in the right eye. AR 748-49.

The ALJ discounted all of this evidence of significant visual impairments.

The single medical opinion finding Plaintiff *not* disabled came from the government medical consultant. However, as even the ALJ correctly points out, the government consulting physician did not have the benefit of any of the treatment notes associated with Plaintiff's glaucoma and retinopathy. AR 136. Thus, the ALJ correctly found the government consultant's opinion of non-disability to be unpersuasive. AR 136.

Dr. Dominguez, MD, the treating internal medicine physician, did find Plaintiff to be disabled. However, the ALJ also found Dr. Dominguez's opinion to be "unpersuasive."[5] AR 136. The ALJ offered an explanation: "his diagnoses of 'blindness' is inconsistent with records from multiple orthopedic [sic] specialists indicating that, despite having severe stage glaucoma, the claimant retains good corrected visual acuity bilaterally and visual field index scores of 65% on the right and 98% on the left." AR 136. Yet, none of the reports actually describe Plaintiff's acuity as "good." And medical literature suggests that a visual field index of 65% represents a total loss of vision in 35% of the visual field – a limitation that may fall to the level of an unacceptable impairment for an employer hiring for the position of nut or dowel inspector or glasses assembler.

Ophthalmologists Weinreb, Hsu, and Patel, expressed no opinions regarding Plaintiff's ability to work or how Plaintiff's vision loss would impair his ability to work. Unfortunately, the ALJ did not solicit opinions from these treating ophthalmologists nor did he seek an updated opinion regarding vision limitations from the government's

---

[5] In rejecting the opinion of Dr. Dominguez, MD, the ALJ seems to have skipped over the post-2017 federal regulations for evaluating medical opinions. See 20 C.F.R. §404.1520c. For example, the ALJ did not recognize the length of the treatment relationship spanning at least two years. Nor was the frequency of examinations noted. And the ALJ did not consider that Dr. Dominguez, MD, was an examining physician as opposed to one who only reviews evidence in a folder.

consulting physician.  In discussing Plaintiff's testimony, the ALJ did acknowledge some vision loss finding "deficits associated with the claimant's glaucoma and retinopathy could reasonably impose some degree of visually related work restrictions," (AR 137), but curiously did not mention any visual limitations in posing the hypothetical residual functional capacity question to the vocational expert.  AR 36-37.

      The ALJ also discounted Plaintiff's own testimony about his visual impairments.  Before a claimant's testimony can be rejected, where (as is the case here) there is objective medical evidence of an underlying impairment and there is no evidence of malingering, the ALJ must provide specific, clear, and convincing reasons.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488 (9th Cir. 2015) ("When an Administrative Law Judge (ALJ) determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.").  The ALJ here provided reasons for disbelieving the Plaintiff's vision testimony, but the reasons are not convincing.

      For one thing, a person may be disabled from a severe impairment while symptoms wax and wane.  *Taylor v. Commissioner*, 659 F.3d 1228, 1234 (9th Cir. 2011) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("one does not need to be utterly incapacitated in order to be disabled").  At the hearing, Plaintiff describes his sudden vision loss as episodic rather than continuous.[6]  He does not drive a car because

---

[6] "Yes.  According to my doctor . . . he told me there's nothing he can do.  He said the vision is gone.  The only treatments and stuff that I'm having is to, I guess, slow down the process.
. . . .
It's – completely lose the vision.  I can't see anything and, I mean, that's the only way to describe it. I can't see anything.
. . . .
Sometimes it lasts minutes, sometimes hours.

of the risk of danger from sudden blindness. AR 19-20, 24. The ALJ found his testimony "contradictory" because he also reports being able to watch television, handle money, shop in stores, etc. AR 137. It could be error to reject a claimant's testimony on this basis. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.").

No one has suspected Plaintiff of malingering and neither the treating physicians, nor the Commissioner's consulting physician, suggest that Plaintiff's recurring vision loss is fabricated or exaggerated. Consequently, the ALJ has not provided convincing reasons for rejecting Plaintiff's vision loss testimony. *Brown-Hunter*, 806 F.3d at 493. That is not to say that the ALJ's decision was careless. His decision demonstrates a thorough review of the medical record and a reasoned consideration of the case. Nevertheless, the reasons must be also convincing to this Court in order to withstand review.

Moreover, an ALJ has a duty to develop the record of evidence for a claimant. "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered[.]" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotations omitted). The ALJ rejected Plaintiff's vision testimony at step five of the well-known disability evaluation process. But the ALJ did not consider vision limitations at step five perhaps because no medical source had opined on those vision limits. In order to determine Plaintiff's

---

. . . . I mean, it happens all the time. Sometimes I have to call the ambulance and the ambulance [to] pick me up at the hospital, I'm usually at the hospital – maybe, actually it probably does last maybe longer than an hour sometimes. From when the ambulance picks me up and takes me to the hospital and see what they can do. Then, you know, by the time I'm gaining – they're giving me treatments and stuff and I'm gaining my vision back." AR 25-26.

residual functional capacity at step five, the opinion of a vision specialist was needed to describe Plaintiff's vision impairments.[7]

While the ALJ is responsible for assessing a plaintiff's residual functional capacity, "[b]arring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." *Id.* (quoting *Duarte v. Saul*, No. 2:19-cv-01019 AC, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020)). "In formulating an RFC, an ALJ cannot interpret raw medical data." *Id.* (citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (noting the ALJ was not qualified as a medical expert)). An ALJ cannot "substitute his own interpretations of medical records and data for medical opinions" when determining a claimant's residual functional capacity. *Mack v. Saul*, No. 18-cv-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020).

Here, Plaintiff's vision test results and treatment records are the type of raw medical data that is difficult for the lay person to interpret. Unfortunately, there is no medical opinion in the record that interprets the vision testing data in regard to work limitations. As it was in the case of *Howell v. Kijakazi*, it is the also the case here. "Because the record was inadequate to establish Plaintiff's current function-by-function capabilities, the ALJ had a duty to further develop the record. His failure to do so was an error." *Howell,* No. 20-cv-2517-BLM, 2022 WL 2759090, at *10 (S.D. Cal. July 14, 2022) (citation omitted). The ALJ's duty to further develop the record warrants either a consultative examination or medical expert opinion by a physician who has access to

---

[7] A claimant's RFC "is the most [he] can still do despite [his] limitations" and is determined by the ALJ after assessing all the relevant evidence. 20 C.F.R. § 404.1545(a)(1). "An RFC is ... based upon all relevant evidence in the record, including medical records, medical source statements, and symptom testimony." *Howell v. Kijakazi,* No. 20-cv-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (citing 20 C.F.R. § 404.1545(a)(1)-(3)).

Plaintiff's ophthalmologic records through July 2023. *Id.* (citing *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006)).

The ALJ also has a duty to pose to a vocational expert a hypothetical with all of a claimant's medical limitations. "If the hypothetical does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citing *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988)); *Anderson v. Bisignano*, No. 5:24-cv-09503-BLF, 2025 WL 2447960 (N.D. Cal. Aug. 19, 2025) ("If the hypothetical 'does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value . . . .'") (quoting *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). No limits or vision impairments were put to the vocational expert in Plaintiff's case; none were considered. Had the ALJ posed to the vocational expert a hypothetical which included Plaintiff's vision limitations (as informed by a medical expert), it is likely that the vocational expert would have offered a much different opinion of Plaintiff's ability (or inability) to perform substantial gainful work.

Remand is necessary to provide the Commissioner with an opportunity to develop the record. The Commissioner should obtain an opinion from a medical specialist about limitations on work which will result from Plaintiff's Primary Open-Angle Glaucoma. Then, the ALJ will be equipped to pose a hypothetical to a vocational expert which will include all of Plaintiff's limitations. Only then will the ALJ be in a position to decide whether Plaintiff retains the residual functional capacity to perform substantial gainful employment in the national economy. *See e.g. Barrow v. Colvin*, No. 2:14-CV-269-RHW, 2016 WL 737923, at *9 (E.D. Wash. Feb. 23, 2016) ("In this instance, the record is underdeveloped . . . . glaucoma is a progressive disease, particularly when left untreated. . . . The Court remands this claim to the Commissioner to have an ALJ reevaluate Mr. Barrow's claim. A consultative exam would be useful to shed light on Mr. Barrow's conditions and residual functional capacity, and the Court recommends that the ALJ order one.").

     IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is reversed and the case is remanded for further consideration.

Dated: August 27, 2025

                                      **HON. ROGER T. BENITEZ**
                                      United States District Judge